FILED
AUG 2 0 2020
Clerk, U S District Court
District Of Montana
Billings

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**GREGORY REX WILSON,**<br><br>**Defendant.** | **CR 17-10-BLG-SPW**<br><br>**MEMORANDUM IN SUPPORT OF ORDER RE DEFENDANT'S MOTION TO DISMISS** |

Before the Court is Defendant Gregory Rex Wilson's motion to dismiss for violation of the constitutional right to speedy trial and due process of law. (Doc. 76.) On August 5, 2020, this Court issued an order denying Wilson's motion with notice that a memorandum in support of that order would be forthcoming. (Doc. 116.)

## I. RELEVANT FACTUAL BACKGROUND

On January 19, 2017, Wilson was indicted in the District of Montana for charges stemming from a 2014 drug trafficking investigation in Billings, Montana. At the time of the indictment, Wilson was in the custody the District of Oregon after his arrest in Portland on December 12, 2016 for unrelated drug and firearm charges.

The District of Oregon issued a federal indictment on those charges on March 1, 2017. The District of Montana then filed a detainer for Wilson on March 2, 2017 but decided to delay prosecuting Wilson in Montana until the Oregon federal charges were resolved. Oregon and Montana subsequently engaged in discussions about the potential for a global plea agreement resolving all charges against Wilson. Montana ultimately declined to pursue such an agreement.

On December 13, 2018, Wilson was sentenced in Oregon to 84 months for Possession with Intent to Distribute Heroin and Felon in Possession of a Firearm. Wilson was then transported to Montana for his initial appearance on March 7, 2019.

On March 13, 2019, the Montana Federal Defenders withdrew as counsel for Wilson due to a conflict of interest. (Doc. 12.) Marvin McCann replaced the Defenders as Wilson's attorney that same day.

On April 26, 2019, Wilson's attorney moved to continue trial due to his recent appointment as counsel. (Doc. 15.) The Court granted the motion on April 29, 2019 and reset trial for August 12, 2019.

On May 22, 2019, Wilson's attorney moved to withdraw as counsel, citing concerns with communication and a break down of the attorney/client relationship. (Doc. 18.) The Court granted the motion to withdraw on May 30, 2019 and Jennifer Dwyer was appointed to replace Wilson's counsel.

On July 1, 2019, Wilson moved to continue trial citing the need for more time to prepare and review discovery. (Doc. 22.) The Court granted the motion that same day and reset trial for October 12, 2019.

On September 18, 2019, Wilson moved to continue trial citing the need for additional time to prepare and review recently received discovery. (Doc. 27.) The Court granted the motion on September 24, 2019 and reset trial for December 16, 2019.

On December 2, 2019, Wilson moved to change his plea. (Doc. 35.) A change of plea hearing before Magistrate Judge Cavan was set for December 10, 2019.

On December 4, 2019, counsel for Wilson moved to continue the change of plea hearing from 9:30 a.m. to 4:00 p.m. on December 10, 2019. (Doc. 38.) Magistrate Judge Cavan granted the motion the same day.

On December 10, 2019, Wilson moved in court to continue the change of plea hearing. Magistrate Judge Cavan reset the hearing for December 16, 2019.

On December 13, 2019, Wilson moved to continue the change of plea hearing citing scheduling conflicts with his counsel and the need to review sentencing guideline applications. (Doc. 45.) Magistrate Judge Cavan granted the motion and reset the hearing for December 20, 2019.

On December 20, 2019, Wilson informed Magistrate Judge Cavan that he no longer wished to change his plea to the Superseding Indictment and wanted to proceed to trial instead. Magistrate Judge Cavan informed the Court of this decision and the trial was reset for January 6, 2020.

On December 23, 2019, Wilson moved to continue trial citing the need to further prepare, review discovery, and counsel's travel conflicts. (Doc. 49.) The Court granted this motion and reset trial for February 3, 2020.

On January 17, 2020, Wilson moved to continue trial citing the need for more time to prepare and review discovery. (Doc. 51.) The Court granted the motion but warned the parties that no further continuances would be granted absent extraordinary circumstances. Trial was reset for April 13, 2020.

On March 18, 2020, the Court *sua sponte* continued the trial set for April 13 due to COVID-19 concerns and pursuant to a standing order from the Acting Chief Judge for the District of Montana vacating all criminal and civil jury trials. (Administrative Order 20-14). Trial was reset for June 15, 2020.

On May 14, 2020, the Government moved to continue trial due to concerns about bringing in three witnesses from out of state during the COVID-19 pandemic. (Doc. 78.) Wilson objected to this continuance. The Court granted the motion and reset trial for its most recent setting of August 10, 2020.

## II. DISCUSSION

### a. Sixth Amendment Speedy Trial Violation

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial . . . ." The fundamental right to a speedy trial is imposed on the States by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967). The right attaches when a defendant is "indicted, arrested, or otherwise officially accused," whichever comes first. *United States v. MacDonald*, 456 U.S. 1, 6-7 (1982). The Court employs a balancing test to determine whether the right to a speedy trial has been violated. *Doggett v. United States*, 505 U.S. 647, 651 (1992). The factors to be considered are (1) whether delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as the delay's result. *Doggett*, 505 U.S. at 651 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

#### *1. Length of Delay.*

The length of the delay is a threshold issue. *Barker*, 407 U.S. at 520. Delay is measured from "the time of the indictment to the time of trial." *United States v.*

*Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. "Most courts have found a delay that approaches one year is presumptively prejudicial." *U.S. v. Corona-Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007).

The delay here is approximately 43 months from indictment to trial. As conceded by the Government, this length of delay meets the threshold standard for presumptively prejudicial.

*2. Reason for the Delay.*

The length of the delay must be examined in light of the degree of culpability or negligence by the government. *See United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993). The less at fault the government is for the delay, the more likely the delay was justified. *See Barker*, 407 U.S. at 531. A deliberate attempt to hamper the defense by delaying the trial should be weighed heavily against the government. *Barker*, 407 U.S. at 531. Government negligence should be weighted less heavily. *Barker*, 407 U.S. at 531. A valid reason justifies the delay. *Barker*, 407 U.S. at 531.

Wilson's argument focuses primarily on the delay between the January 19, 2017 indictment and Wilson's initial appearance in Montana on March 7, 2019.

Wilson contends the Government was negligent in its duty to bring Wilson to trial by not actively pursuing options, such as a global plea agreement or a Fed. R. Crim. P. 20 transfer, to bring Wilson to Montana for prosecution sooner. The Government responds that, while it does owe Wilson some duty to bring him to trial quickly, it is not required to accept a plea agreement or transfer that the Government feels would not best serve the ends of justice. Further, the Government's decision to delay Wilson's prosecution until after his Oregon sentencing did not violate the defendant's right to a speedy trial because when a defendant commits criminal acts in two different sovereigns, it is not negligent for one sovereign to wait their turn "at the prosecutorial turnstile." (Doc. 83 at 5 (citing *United States v. Watford*, 468 F.3d 891, 902 (6th Cir. 2006)).)

In *United States v. Myers*, the Ninth Circuit analyzed a similar issue of delay when the federal government in the Eastern District of Washington decided to postpone prosecuting Myers until the resolution of his state prosecution. 910 F.3d 1113 (9th Cir. 2019). Both the state and federal charges were based on events surrounding Myers' arrest on January 30, 2015. The state arraigned Myers in early May 2015. The federal government subsequently issued an indictment and detainer for Myers on May 5, 2015. *Id.* at 1117. Unfortunately, the state prosecution faced substantial delays culminating in Myers pleading guilty in January of 2017. Myers

appeared in federal court a month later. *Id.* at 1118. Claiming this prolonged term violated his right to speedy trial, Myers moved to dismiss the federal court prosecution, but the district court denied the motion after determining that the federal government's decision to postpone Myers' appearance until the completion of the state charges was a valid reason for delay. *Id.*

On appeal, the Ninth Circuit recognized other circuits were split on the issue of whether waiting for the conclusion of a state's case constituted a valid reason for federal prosecution delay. *Id.* at 1120-21. The Fourth, Sixth, and Eighth Circuits held that waiting in line behind the state's prosecution was a per se valid reason for delay while the Tenth and Seventh Circuits used an ad hoc approach to examine the rationale for the delay. *Id.* The Ninth Circuit agreed with the Tenth and Seventh Circuits stating "that where a delay arises due to concurrent state and federal proceedings, a court must consider the nature and circumstances of the delay in order to determine whether (and how much) it weighs against the government." *Id.* at 1121. The *Myers* Court explained if the state and federal charges factually overlapped to such an extent as to create administrative hurdles and safety concerns, the decision to delay may be more justified. However, if the charges were distinct and the federal government fails to present any evidence of administrative or safety concerns, a court could weigh the delay against the

government as unjustified. *Id.*

The decision was quickly applied to a similar situation as that facing this Court—a federal district's decision to delay prosecution due to another federal district's prosecution. In *United States v. Cook*, the defendant received a federal indictment from the Eastern District of California while he was in custody in the Eastern District of Tennessee. 2019 U.S. Dist. LEXIS 220016, *1-2 (E.D. Cal. 2019). The Eastern District of California decided to wait for the conclusion of the Tennessee charges before transferring the defendant. Cook asserted this decision violated her right to a speedy trial. *Id.* at *6. The district court decided to weigh the delay less heavily against the Government because logistical obstacles were the primary factor in the delay and, "[n]otably," Cook presented no evidence that the Government acted in bad faith. *Id.* Those obstacles included the amount of time and resources needed to transfer the defendant between districts as well as accounting for the defendant's right to be present for sentencing and a presentence report interview. *Id.* at *7. The district court found the rationale reasonable. *Id.*

Similarly here, Wilson has presented no evidence that the Government's actions were motivated by bad faith. Wilson speculates that the Government deliberately caused the delay by rejecting a proposed global plea agreement but presents no proof as to how that decision was made in bad faith. Instead, the

Government explains it felt the proposal did not represent a just punishment for the charges facing Wilson in Montana and determined that transferring Wilson back and forth between Oregon and Montana would result in an administrative tug of war. (Doc. 83 at 6-7.) The Court finds this rationale reasonable and weighs the delay less heavily against the Government.

*3. Assertion of Right to Speedy Trial.*

This factor is closely related to the other three as "the strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice . . . that he experiences." *Barker*, 407 U.S. at 531. An assertion of the right to speedy trial is entitled to strong evidentiary support of the defendant's deprivation. However, the assertion of the right must be viewed in the context of the defendant's other conduct. *United States v. Loudhawk*, 474 U.S. 302, 315 (1986). Failure to assert the right places a greater obstacle before the defendant but is not fatal to their claim. *Barker*, 407 U.S. at 532.

Montana indicted Wilson on January 19, 2017. He filed the present motion asserting his right to a speedy trial on May 8, 2020. During that time of almost 14 months, Wilson filed eight motions to continue either his trial or his change of plea hearing. The Government filed one motion to continue, on May 14, 2020, after Wilson had asserted his right. Wilson objected to that motion. While Wilson's

assertion of his right carries great evidentiary weight, it must be viewed in light of the numerous motions to continue filed on his behalf. Therefore, the Court determines that this factor weighs in favor of neither party.

*4. Prejudice to the Defendant.*

The Supreme Court has identified three interests the speedy trial right is designed to protect and which may be prejudiced by an excessive delay: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern; and (3) limiting the possibility that delay will impair the defense. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Wilson explains that the pretrial delay prejudiced his case through increased anxiety and the inability to locate a witness that could be material to his defense. Part of the Government's evidence against Wilson involves a package shipped from Billings to an address in Vancouver, Washington on July 10, 2014. The package was addressed to S.E. Franklin Street. Leigh Ann Hill allegedly resided at that address when the package was sent. Wilson contends that Ms. Hill's testimony is vital to his defense because she would know if that package contained illegal drugs or cash payments for drugs. Wilson's defense counsel explains that they have attempted

numerous searches online and on social media for Ms. Hill. Wilson's wife, who still resides in Ms. Hill's last known location, has also attempted to track down the witness by questioning neighbors and searching newspapers. However, Wilson's counsel admits that efforts to locate Hill only began within the last four to five months.

The Government responds that Wilson's assertions of prejudice fail to meet his burden of presenting more than speculative or generalized statements of anxiety and lost witnesses. *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995). According to the argument, Wilson has not made it clear what evidentiary value Ms. Hill could hold as a witness or that she even exists. The Government also tried to locate Ms. Hill with no success. Regardless, the Government believes that Ms. Hill's testimony would have little material value at trial as the Government intends to rely primarily on the text message and shipping label evidence it obtained through investigation.

The Court agrees with the Government on this factor. Wilson has failed to put forth more than speculative or generalized statements of prejudice stemming from anxiety and the inability to locate Ms. Hill. This factor concerns itself with prejudice caused by the delay between the defendant's indictment and trial, not generalized prejudice arising from events transpiring before a trial occurs. *United States v.*

*Gregory*, 322 F.3d 1157, 1163 (9th Cir. 2003). Here, Wilson argues that the delay prejudiced his defense through the loss of a "critical" witness. However, Wilson has failed to put forth more than speculative arguments for how Ms. Hill's testimony is critical to the defense other than she might be able to testify to the contents of a box shipped to a place she resided at the time. Wilson also fails to demonstrate how this inability to locate Ms. Hill was caused by the delay from Wilson's indictment on January 19, 2017 to his trial setting on August 10, 2020. While the delay is substantial, Wilson did not attempt to locate Ms. Hill until March or April of 2020 according to Wilson's counsel. It is undisputed that Wilson made his initial appearance in Montana on March 7, 2019. From that point forward, Wilson had access to counsel who could have initiated efforts to locate this allegedly critical witness, yet no efforts were made until a year later. Therefore, the Court finds that Wilson's prejudice argument fails to provide more than speculative or generalized statements of anxiety and defense impairment. Further, Wilson's lack of effort to locate the witness for a year after his initial appearance demonstrates that any alleged prejudice was not a result of the delay itself. This factor weighs in favor of the Government.

After considering all of the Barker factors, the Court concludes that the 43-month delay, while significant, does not entitle Wilson to a dismissal of the

Government's indictment against him. The Government's decision to postpone prosecuting Wilson until the conclusion of criminal proceedings in Oregon was reasonable under the circumstances. Further, the delay itself did not cause undue prejudice to Wilson or his defense.

**b. Fifth Amendment Due Process Violation**

The Fifth Amendment provides a defendant due process protection from an excessive preindictment delay. *Gregory*, 322 F.3d at 1165 (citing *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989)). To claim a violation, a defendant must demonstrate "actual, non-speculative prejudice from the delay and that the delay, when weighed against the government's reasons for it, offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* (quoting *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001)). Proof of a violation demands a heavy burden—the defendant must provide definite evidence of how the lost evidence or witness is prejudicial to their defense. Speculative arguments will not fulfill the requirement. *Id.* (citing *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985)). The level of prejudice required for a Fifth Amendment violation is greater if the delay resulted from government negligence than if the delay resulted from reckless or intentional misconduct. *Id.*

Wilson argues that the lengthy preindictment delay between the time of the alleged crime in 2014 and Wilson's indictment in 2017 prejudiced his defense through the loss of a critical witness and by subjecting the defendant to higher statutory penalties. The Government alleges that Wilson received over $10,000 in drug cash in a package delivered to an address in Vancouver, WA. According to Wilson, Leigh Ann Hill lived at the residence when the package was sent. Wilson states that Ms. Hill's testimony could describe what was in that package and potentially refute the Government's entire theory that Wilson was shipping illegal substances through the mail in exchange for cash. Further, Wilson points to an apparent discrepancy between his charges and those of the individual whom he allegedly mailed drugs to in 2014 (Wilson faces three charges for drug trafficking and possession while the individual in 2014 only faced two). Wilson argues the Government's decision to delay indictment exposed the defendant to greater criminal liability.

This argument fails to meet Wilson's heavy burden of demonstrating prejudice to his defense. First, Wilson speculates that Leigh Ann Hill would have been a critical witness for his defense but fails to offer any proof that the individual actually exists, let alone that she received the package in question, opened it and would testify that it did not contain over $10,000 in drug cash. The Government

states that it attempted to locate Ms. Hill during the initial investigation in 2014 but federal agents could not track her down. Wilson himself did not attempt to locate Ms. Hill until March or April of 2020, at least a year after his appearance in Montana on the criminal charges and over three years after his initial indictment. Wilson states that if the Government had charged Wilson in 2014 or 2015 with the underlying crimes, Ms. Hill "would likely have been readily found" but does not describe why that would be or what efforts could have been made to locate her that are no longer possible with the passage of time. (Doc. 77 at 18.) Thus, without offering any evidence about the witness's existence or how her testimony would have aided in Wilson's defense other than speculation, Wilson fails to show that the preindictment delay prejudiced his defense through the loss of a witness.

Wilson's second argument that the Government's delay subjected him to greater criminal liability also fails to rise above speculation. It is unclear from Wilson's explanation exactly how the delay from 2014 to 2017 exposed him to additional charges. It appears that Wilson relies on the difference in years between his charges and those of his alleged partner as the only explanation for Wilson's additional charge. Regardless, the argument that a preindictment delay potentially led to additional charges or the use of prior convictions is inadequate to satisfy the requirements under the Fifth Amendment. *See Gregory*, 322 F.3d at 1165; *United*

*States v. Martinez*, 77 F.3d 332, 336-37 (9th Cir. 1996) (a potentially higher criminal history score resulting from a preindictment delay was too speculative to constitute definite proof of prejudice). The Court finds that Wilson's Fifth Amendment due process argument fails to meet its heavy burden due to lack of evidentiary support.

**IT IS HEREBY ORDERED** that Wilson's motion to dismiss for violation of the constitutional rights to a speedy trial and due process is **DENIED.**

The Clerk of Court shall notify the parties of this Order.

DATED this 19th day of August, 2020.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge